The Honorable, the Judges of the United States Court of Appeals for the 8th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 8th Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. Please be seated. Please publish the cases for argument and submission this morning. The following cases are scheduled for oral argument this morning, Wednesday, January 14, 2026. 24-2584 and 24-2638 from Western Arkansas, Pioneer Civil Construction v. Ingevity Arkansas, et al. 25-1750, Southern Iowa, Iowa Citizens for Community Improvement v. Kimberly Reynolds, et al. 24-3548, Southern Iowa, Lawrence-Camby v. State of Iowa, et al. 24-2665, Eastern Arkansas, Stephen Allen v. Nature Conservancy, et al. 25-2045, Southern Iowa, United States v. Carl Doudon. In addition, the following case is submitted on the briefs and record without oral argument. 25-1506, Southern Iowa, Raya, Chiwet, v. Walmart. The first case for argument is Pioneer Civil Construction v. Ingevity, Arkansas, et al. Thank you, Mr. Carson. Thank you, Your Honors. May it please the Court, my name is Dorsey Carson representing the appellants here. Ingevity, Arkansas, LLC and Ingevity Corporation, a South Carolina chemical industrial plant in Arkansas is the subject matter of this. I'll be brief. It was when I saw the time, while I'm cutting my lip this morning, I threw out my outline. So I'm just going to talk to you about these four issues that we've argued for appeal here. The first has to do with interpretation of South Carolina law. And it's a relatively simple issue, is that during this case, and a lot of construction cases don't come up before the court because they're in arbitration. So there's not a whole lot that the court can turn to, which is why a lot of times we cite the federal appeal, the federal claims court, because that interprets often these same provisions. So in this contract, there's a provision for termination for convenience and a termination for default. Our client terminated a road contractor, Pioneer, for default for safety violations. It turns out after that termination, and around that same time we're investigating the road construction, it usually doesn't meet the three and a half inch asphalt thickness requirements. The road starts crumbling after the fact. We discover that we're going to have to tear out the entire road. Fast forward five months down the road. In the very day that we're tearing out the road, we find out there's a lawsuit being filed by Pioneer. At that point in time, and I'll just jump to the argument here, which is that the court determined that there was a termination for convenience, not for cause, that safety wasn't specifically in the contract. Sir, where did that term get introduced in the proceedings below? The termination for convenience? Yes, that's not a, this was a bilateral contract at will, right? Well, yes, your honor, in that the termination for convenience is section 22, and the difference is... It doesn't use the word convenience? No, sir, it doesn't. That's just the common term in the industry. And so that's what, you have the right to terminate. Where do I find that it's a common term in the industry? The federal contracts, the farmers have them, and so any case that talks about, in terms of federal contracting, there's an automatic provision if a federal court of claims or some other court determines that it's not a default, then they just convert it to convenience. The damages are very similar, though. It's not that much difference. Well, what's the source then for, I mean, a contract terminal at will outside this context has a normal progression. Yes, your honor. The terminated party sues for unpaid invoices. The terminating party counterclaims if it believes the contract was breached during performance, and you litigate. That's it. So where does this get, why does this get off that track? It gets off the track on damages, first of all. No, no, no, I'm not talking about that. That's the end of the road. Okay. Well, I'll just cut to the chase then. I mean, where it gets off track is that there's a fundamental misunderstanding of damages once there's a termination, and as we progress to trial, even though we survive... This contract of convenience is, though, it's something different than the contractual right to terminate at will. It's not.  So, but it's used that, but the district court didn't appreciate that. Right. We agree with that. All right. So where do I go to find out the district court's source for its interpretation of contract of convenience? Well, you can go to South Carolina law, and one of the main cases we cite is the case of Walton General Contractors, and then the Bodine Noble case is really the key one that I'd like to point out to your honors. What is it, OB? B-O-D-D-I-E, Noel, N-O-E-L-L. And in that case, the South Carolina Supreme Court adopted specifically the restatements, C-G-A-S, Corbin on contracts to say that once there's a cancellation of a contract termination, you still have the rights to counterclaim. You still, and this flows into our second argument, really, is that you still have those rights. Yeah, district court cut that off. Cut it off. They're using the warrant contract of convenience without defining where the court got that term. Yeah, and it's not specifically. I'm still waiting for that. Right. Section 22 calls it, if I can get the title of it, Section 22 calls it termination, suspension, or delay, and 23 calls it default. So under 22, you have the right at will. They're two different. Yeah, the distinction between the two is essential to this case. Yes, Your Honor. The 22, you have to prove reasonable and documented cost, actual cost after termination. In the middle of trial, we, before we put on any evidence, the court directed verdict against us on both the counterclaims, our counterclaims, and on everything but damages. Counsel, let me ask this. Yes, Your Honor. If we were to agree with the district court that the Abbott's Field safety requirements were not incorporated into the contract, and we were to further agree with the district court that the presentment of the accurate, what's the terminology? Termination for default or convenience or? No, no, no. The accurate statements that you claim were not provided. So we didn't actually appeal because I don't think it's an erroneous, I don't think it's reversible to say it's under Section 22 verse 23. I disagree with it, but it's not reversible error. But what it is is that you still have to prove your damages. That's still always the plaintiff's duty. Well, but if that was not a condition preceding to payment, all right? Right. Do you still argue that there's still error in terms of jury instructions or what is the problem at that point? Yes, Your Honor. It's both in the claims not being presented and actually one thing that really obviously the briefs are long. The one thing I don't think we emphasized enough was that we could not even use the word defect in our defense and in our counterclaim. And this, in our view, is a construction defect. And that's because of the grounding of the motion in limine, right? Well, no, the motion in limine was actually asked as to safety. So we couldn't argue there about the reasons for termination, which made it very difficult and confusing for the jury when the other side is saying they had a right to cure. What about the damage? Now, the trial was limited basically at the end just to damages. That's right. Were you allowed to argue defects in the road construction at that point? No. Judge Gratz, we were able only to use the word commissioning to determine the percentage of completion. We were not able to call it defects, even though that's what we were really talking about is that the road never met specifications. It never would. Of course, the district court had previously determined that as a matter of law there was no breach of the contract as to the quality of the road. But at the damages phase, you were still not allowed to argue that the road was defective.  So the breach, that ruling didn't happen until trial. At the halfway through trial, that was it. And, yes, even with that, we were not able to – What was the – that there was no breach? I thought the court just didn't think that issue was relevant. The court during trial – In other words, there was no breach in the manner of construction prior to termination. That happened halfway through trial. We did not – the first – Well, give me a page then. Of the trial transcript of what happened? Yes, Judge, it clearly ruled that there was no breach. I believe it's 1225, Your Honor, of the trial transcript. I can – I'm sorry, Your Honor, I don't have that exactly in front of me. But I believe it's 1225. And I'll correct myself in a second if I'm wrong. But that's where the court ruled. That's the directive verdict. Once you get to the directive verdict, that's where – And honestly, Your Honor, it was unclear to us. It was not until we got back that I – from my 15-minute break that I realized that all of our counterclaims were gone too. And so at that point, it also became an evidentiary issue that it was not before. And it became a jury instruction issue that it was not before. And one of the difficulties even – again, this one is not really emphasized in the brief. But even the jury instruction, what went to the jury, had the word ingevity as a singular body, even though there's two ingevities here. So the question even after the judgment is, well, which one did the jury find or was it both of them? So – and we had a long set of jury instructions that went through South Carolina law. And in South Carolina law, it's clear most of the – and many of the jury instructions were specifically based on South Carolina model rules on this. I did have one other question. So because of the district court's JMOL ruling, isn't your appeal really as to the sufficiency of the evidence? And if so, was that preserved? No, Your Honor. It's not sufficiency of the evidence. In fact, there's some support out there for the position that Rule 50A, and body is one of those cases, that Rule 50A is not even really appropriate because it was not – it didn't go to the jury. So these issues are Rule 59, Rule 60. It goes to interpretation of contract law. If I may reserve some time, Your Honor, if you – okay, thank you.  Mr. Thompson? May it please the Court, my name is Michael Thompson. I'm with the law firm of Wright, Lindsey & Jennings, LLP, and I represent the – I can't hear a word. Yes, sir. You've got to have the mic better and speak – Oh, I'm sorry. Is this better? Well, yeah. Okay, sorry. You can raise the podium. Yes, sir. I will just lean in a bit if that works for you, sir. I represent the LLP, Pioneer Civil Construction. While I'm more than happy and will get into those merits issues that you were discussing with Mr. Carson, the preliminary issue with this case is this case should be dismissed as untimely. I didn't understand that. You can't articulate, for me at least. Yes, sir. This case should be dismissed as untimely. There's no question the notice of appeal was filed more than 30 days after the judgment was entered in this case. Well, that's been thoroughly briefed, so I wouldn't – for me, you're wasting your time on an oral argument on it. Okay. Well, then I will move on to the merits issue. My colleagues might disagree. I will move on to the merits issue, Your Honor. Your Honor, you were talking with Mr. Carson about the convenience issue, and you hit the nail on the head when you said the dispute in this case is the tension between Sections 22 and Sections 23 of the Terms and Conditions. I don't think there's any tension if you read them carefully, frankly. Well, what it is is it gives two different paths to termination in this case. One of them is – I don't want to get caught up in the terminology, but you don't have to show any cause. It's at will. They can do it any time. One of them is for cause. Now, what distinguishes this case from the ordinary case – You mean default? Yes, sir. For default. To use the exact word. There is quite a difference in the law between those two words. Yes, Your Honor. In contract law, in my experience. Yes, Your Honor. The default provision includes a right to cure for pioneer, and that is what distinguishes this from the ordinary case that would proceed exactly as you suggested. We sue for unpaid invoices, and they counterclaim for the damages. I don't understand that. Well – If it's simply an at will termination, normal contract principles would allow the terminating party to counterclaim for poor performance. And they've modified those provisions by, in the default provisions, giving us a right to cure. That is our argument. So if there was no notice and opportunity to cure, provided it's necessarily for convenience. Under Section 22, I don't want to get caught up in terminology. In Section 22, there is no opportunity to cure. But they gave it to us in default. And so what cases have said, and we cited three out-of-state cases to the District Court, one out of Oregon, one out of Washington, and one out of New York, and those are all cited in our brief. They say that when you do this, you have created two alternative and mutually exclusive paths. Because if you want to make a claim, we can only warrant finished work. And if we want to make a claim that what we built was not correctly built, you have to let us finish it. And under Section 23 and Section 7, which is the warranty section, you have to give us a chance to cure it. So they could have given us a notice of default under Section 23, a notice of warranty claim under Section 7, and said, fix it. And if we had failed to fix it, then they would have a counterclaim for the damages. What they did instead was terminate us under Section 22. And Mr. Carson candidly acknowledged they maybe thought they had terminated us under Section 23. The District Court ruled that it wasn't the safety issues that were the cause of termination weren't sufficient for Section 23, and they haven't appealed that issue. So there's no question that we are under Section 22. And having not let us finish the road, having not let us repair the road, that bars them from seeking damages for the road. But at the time of termination, their obligation to pay us for the road had fully accrued. Because this was, as Your Honor pointed out, and as the parties agreed, this was a bilateral contract. Both parties exchanged promises. Those promises accrued at different dates, and their obligation to pay accrued. If what proceeded to trial was a Section 22 claim, aren't you limited to the reasonable costs? And was there evidence of that? Your Honor, this is where I do think this is a sufficiency of the evidence challenge that they waived on the is there evidence. That latter question, I believe, is a question that they waived by failing to renew their post-judgment motion for a matter of law. What happened with the damages limitation on Section 22, we gave two reasons that I'm happy to discuss with this Court. Why the damages limitation in Section 22. All right. What if we disagree with that assertion? What if we address Judge Grunder's question on the merits? Yes, Your Honor. I can get in there. The judge ultimately submitted Section 22 to the jury to decide. The judge did not rule on it either way. The jury reduced our damages by quite a bit. We received less than half of what we were seeking. The question is about your evidence of reasonable costs. It's a compound question. Doesn't that apply? And what was your evidence? And now you're saying, well, the jury, the instruction said, look, you know, read Section 22. In other words, the district court did not instruct on the reasonable cost provision despite being asked to do so. The judge's decision was to let both sides argue the provision to the terms of conditions that they wanted to argue to the jury. She chose not to argue. How can the jury know that that's a condition of the termination if it isn't instructed? There was proof on that point, and that's what attorneys are for in closing arguments. All right. The question was, isn't that a condition of a claim for a Section 22 termination? So, Your Honor, we did. Answer yes or no. In this case, our answer is no. And what support do you have for that? Our support is that for two reasons it does not apply in here, because the terms and conditions, Section 10, say that in the event of a conflict between the terms and conditions and the purchase order or the other terms of the contract, the other terms govern. And so we argue that this does not, the damages limitation in here does not apply because, for one, it says this is your damages in a claim for termination. And we did not sue them for termination on this breach of contract claim. We sued them for not paying up. You know, there is no written contract. We have a purchase order and condition sheet. The purchase order was the, was the. Are we back to complete, whether it's a date of payment or a date of completion? We contend, and the undisputed proof was, that the dates in the purchase order were dates of payment. I know that. But that doesn't get to whether reasonable, proof of reasonable cost is a condition to a claim. Your Honor, in this case, that would be a sufficiency of the evidence challenged in this court. It's not. A contract condition needs to be instructed. I don't know South Carolina law, but I, that's my decades of experience with contract law. On the jury instruction issue, the judge is reviewed only for an abuse of discretion. No, no, no, no. Not the failure to instruct on a term, relevant term. That's an error of law. The judge's decision was that the parties were arguing a number of provisions of the contract and to instruct on any of them would put undue emphasis on it. And so she. So the judge ruled it was not, it was not a condition. I don't think the judge made a ruling. No, she. I don't think the court did either. I think the court blew by the issue. I do think the judge carefully considered the arguments the parties made about section 22. And again, we're talking just here. I've mentioned section 7. I've mentioned section 10. I've mentioned section 23. I think the judge's decision on the jury instructions was to pick out any one of these would be to put undue emphasis on it. But, Your Honor, I do respectfully think that whether or not we offered sufficient evidence of reasonable and documented cost is a sufficiency of the evidence challenge that has been waived. The contract, the interpretation of sections 22 and 23 is a matter of law. If the contract is unambiguous, yes, Your Honor. And I'm sorry, but you've got to tell me again where's the ambiguity. The ambiguity is. The three examples of ambiguity in your brief to me are unpersuasive to me. Your Honor, I have nothing to add to the three examples. I apologize if I failed to persuade you on those. But the three examples in the brief that we've given are what I have to argue. Yeah, there's two different kinds of termination. Terminations and each is covered. Your Honor, what we say on this damages limitation, and this is fully argued in my brief, so I will stop if you want me to. What we say on that is the damages limitation doesn't apply because we're not asserting a claim for termination in this case. And it says this is your damages within a claim for termination. Also, because this is a bilateral contract, whereas the terms and conditions contemplate a unilateral contract. You've got a notice or a letter that we're done, right? Yes, Your Honor. And then you sued for unpaid invoices. Yes, Your Honor. Sure sounds like a breach of contract termination, claim for termination, wrongful termination of an at-will contract. No, Your Honor. I couldn't state it any more clearly. Yes, I. So why is this suddenly, does this semantically turn night into day? Because, Your Honor, their obligation to pay us the full contract amount had already accrued at the time of termination, so we are suing for unpaid invoices. You said it was 60 to 90 percent in the brief. We had completed 80 to 90 percent of the work. Yes, Your Honor. So are you saying that the measure of damages for termination for convenience is the unpaid invoices only? I'm sorry? What is the measure of damages on termination for convenience? Is it just the unpaid invoices, or can they present evidence of defective construction or partial construction? Your Honor, our argument was that it's just the unpaid invoices. But that's not what the jury did, right? They lowered the damages. And Judge Rothstein, on a question you asked, the whole trial was about the condition of this road, even after the judgment as a matter of law argument. That was taken away from the jury. And its relevance wasn't instructed to the jury. Well, the jury apparently found it relevant, and they were allowed to hear it. And I can't come up with any other way to come up with the damages award that the jury gave. It appears to me they switched the 310. They just switched the first two numbers and gave us 130. The proof of ingenuity is proof of defects. But the counterclaims were dismissed as a matter of law, right? Yes, Your Honor. And that's where the – that's how the seller typically gets that poor performance in a contracted will termination case. Well, they were effectively allowed to put on a trial seeking a set-off, so they could have zeroed in. But the jury wasn't told the relevance. The jury apparently found the relevance of it, given the damages. And, I mean, under our argument, we could have argued, hey, we shouldn't have had any evidence of the defect come in. They didn't have to worry about presentation of costs under Section 22. I believe costs is ambiguous as to what it means, if it applies, Your Honor. We did offer proof of how far along we were in the – Did the district court decide that ambiguity? I didn't see anything in the briefs about that. Again, the district court, by allowing the parties to argue the issue, the jury effectively found Section 22 to be ambiguous. Did the district court make a ruling on the ambiguity of the reasonable cost provision that Judge Grunder asked about? Not an express ruling, no, Your Honor. Where do we go in the total record on appeal to see how it was argued? You would look to the parties' arguments in the motions for judgment, a matter of law. You explicitly argued that that's an ambiguous provision? Yes, Your Honor. And you would look in the jury instruction conference. The judge ruled on the motion for judgment as a matter of law at page 800 to 802 of the trial transcript. The jury instruction conference is in the 1200s to the 1220s, somewhere in there in the trial transcript. Unless there's any further questions, I see that my time is expiring. Thank you, Your Honor. Your Honor, there's a few responses to that. First of all, Judge Gratz, you're right about in terms of the damages themselves, and Judge Loken, you're right about the fact that the jury had no idea what the measure of damages were. And so that's why you get a result like $130,000 on a claim where nobody's asking for $130,000. And their position is apparent, and their main witness, the owner of Pioneer, made it clear at trial, yes, we expect to get paid for work we did not do. When this contract not only has two termination clauses, including one that's at will, but specifically has a survival clause in it, section 34, that says, if there is a termination, we still have our warranties. We still have the right to remedial work. So this is, frankly, it's ABC in contract law, and that's where we are, is that every party has the right, payment is only conditioned upon performance. Not just performance, but performance according to the contract, which is the plans and specifications. So in this case, they were just bold about it, that they were seeking payment, and they interpreted this purchase order that says, which we say is the delivery date. That's what anybody would say in the contracting construction industry. And they say, well, that's a payday, and you owe it no matter what. And, of course, that last invoice didn't come in until later. But the final invoicing was for the total amount. And one thing under the contract interpretation, under that first thing, is that we've asked alternatively for a reverse and render on that, because they admit at trial, we know section 22 is the one that applies. Everybody knew that going to trial. The judge had already ruled that in advance. And their primary witness, their only witness to it, said, no, I never provided them actual damages. I wrote down the quote, it's a trial transcript, 478. Lance Griffin said, I don't think I provided any documentation on actual costs, no. And so you can't go back, even if the case goes back now, there's no evidence out there that's going to support any claim for actual and reasonable costs, because they admit they didn't do it. They never provided it to us. And so I'd say that's also a basis for reversing and rendering. Going to the Rule 50, what they're arguing, sufficiency of the evidence waiver and all that, you cannot have a sufficiency of the evidence argument if you don't have that as a standard. So the only standard that went to this jury, they were told section 22, didn't know what that was. We had a whole long list of jury instructions. The trial court admitted that she thought this was the least amount of jury instructions she had ever given a case. So there's seven jury instructions. Six of them are generic. Only one of them actually went to it, and that's just the jury verdict. You know, this is not oral argument level of detail. Yes, Your Honor. It's too much. If you have any other questions, I'll address them. We'll obviously look at the instruction issues, assuming we conclude they matter. Right. And they clearly do, Your Honor, in oral argument. For example, your counterclaims getting JMAL, that doesn't turn on jury instructions. Right. They didn't go to the jury at all. And so on that, and it did come back. You said the jury instructions matter per se. The jury instructions, without those jury instructions, the jury was just given damages, and that's not according to, it's inconsistent with South Carolina law. It's inconsistent with even the motions in limited evidence, and I will challenge opposing counsel when he said we didn't ask that defects were told to the jury. We specifically were not allowed to even use the word defects in our defense. So that's. Use the word what? Defects. We could not use the word defects. And so that presented quite the challenge for our expert, who was a construction defect expert, our engineer. And so for those reasons, Your Honor, and all the ones given, we submit that we appreciate your time. And if there are no further questions, sincerely, it's an honor to be in front of you. Thank you, counsel. Thank you. The case has been thoroughly briefed, and we've covered a lot of ground, and hopefully an oral argument will take it under advisement.